(53 Misc. Rep. 598)

### DORSETT v. DOUBLEDAY, PAGE & CO. et al.

(Supreme Court, Appellate Term. April 10, 1907.)

TRIAL—QUESTION FOR JURY—CREDIBILITY OF WITNESSES—BONA FIDE HOLDER OF NOTE.

· Evidence on the question of bona fide holder, in an action by the assignee of a note, *held* to be for the jury, though the witnesses are not directly contradicted; the witnesses, besides plaintiff, being her son and the payee of the note, and the transactions as testified to being of an unusual character.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 334, 335.]

Appeal from City Court of New York, Trial Term.

Action by Ellen R. Dorsett against Doubleday, Page & Co. and another. From a judgment on a verdict directed for plaintiff, defendant Doubleday, Page & Co. appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and ERLANGER, JJ.

Kellogg, Beckwith & Emery (Frederick R. Kellogg and Dean Emery, of counsel), for appellant.

Malcolm Sundheimer, for respondent.

GIEGERICH, J. The action was brought upon a promissory note to recover the sum of $2,000, with interest, and resulted in the. direction of a verdict in favor of the plaintiff. The defense set up that the note in question was one of a series of similar notes given by the defendant Doubleday, Page & Co. to the defendant Shumaker in payment for Shumaker's interest in a department known as the "Mail Order Department" of the business of said company; that the value of that interest was not ascertainable at the time the notes were given, but by agreement was to be later ascertained by methods provided in

the agreement; and that in the meantime Shumaker should hold and control the notes until the date of such final ascertainment, and should return for cancellation any notes of the series which should be found to be in excess of such amount as finally ascertained and adjusted; further, that Shumaker, in violation of this agreement, transferred the note to one Rae Shepard Dorsett, who had full notice of the terms and nature of the agreement and the conditions on which the note was executed and delivered, and that the plaintiff in turn received the note from said Rae Shepard Dorsett with full notice of the facts, and that she is only a nominal party, and is prosecuting the action in the interest of Shumaker; and, if any value whatsoever purported to be advanced by the plaintiff or by said Rae Shepard Dorsett for the note, that the same had either been fully repaid, or that they have been indemnified by him for any such value advanced.

Upon the trial the plaintiff was called, and testified that she was the owner of the note, which she had purchased for $1,976.13, and she produced and there was put in evidence her check, which she claimed to have given to the order of Rae Shepard Dorsett in payment for the note. Thereupon the plaintiff rested, and a stipulation was introduced in evidence by the defendant, which was treated by counsel on both sides and by the trial judge as conceding, for the purposes of the trial, that the note was given by the defendant Doubleday, Page & Co. to the defendant Shumaker on the terms and conditions alleged in the answer, but without prejudice to the plaintiff's claim that she was a bona fide purchaser for value and without notice, and a holder in due course. Thereupon the defendant rested, and under the circumstances it devolved upon the plaintiff to prove that she took the note in good faith and without knowledge of the wrongful diversion. Berman v. Zuckerman, 22 Misc. Rep. 744, 49 N. Y. Supp. 1070.

The plaintiff then read from her deposition, taken by the defendant before trial, showing that while in Philadelphia in March, 1906, she first heard from her son, Dr. Rae Shepard Dorsett, about the note; that she personally made no investigation at the time; that she deemed the name Doubleday, Page & Co. sufficient security, and that, so far as the responsibility of that company was concerned, she was satisfied to rely solely upon her own judgment, but that, exclusive of that point, she relied upon the judgment of her son in the matter; that she had had no direct communication in regard to the note with Shumaker, either before or after payment was refused; and that she had no "definite, specific, first-hand knowledge whatever" about the relations between Shumaker and Doubleday, Page & Co. She further testified that her son always advised her in the care of her property and that he had selected the attorneys to take steps to collect the note. Testimony was also given in behalf of the plaintiff by Shumaker and Dr. Dorsett that they had been friends for years, and that the note in question, with three others of like amounts, aggregating $8,000, was sold by Shumaker to Dr. Dorsett for a consideration of about $7,600, made up as follows: $2,500, being the aggregate amount of notes held by Dorsett against Shumaker; $1,600, applied by Dorsett on account of the purchase of three houses in the city of Philadelphia by him from Shumaker; about $2,000 in cash, given by him to Shumaker

at the time, together with $1,500 paid later by check. The notes aggregating $2,500 were not produced, however, nor was any clear explanation given of such alleged notes, except the fact that Dorsett had been in the habit of loaning money from time to time to Shumaker.

It further appeared that Shumaker had never seen the houses but once which it was claimed he purchased, and that the deeds for the same, instead of being taken in his name, were taken in the name of Dorsett, and that no instrument or trust was ever executed by the latter, nor any other writing made showing that the houses were Shumaker's. Neither was any writing produced showing the payment of $2,000 by Dorsett to Shumaker. It was claimed by them that this payment was made in cash; but Dorsett, who was a practising physician in Philadelphia, does not explain in any satisfactory way how he came to have such an amount of cash on hand, except to say that he collected money from his patients and kept it in a deposit box, but he could not remember any other time when he had so large an amount as $2,000. It is worth mentioning, also, that the claim is made that the sum was made up principally of $100 bills. After Shumaker received the $2,000 in cash, he did not deposit it in any bank, but turned it over to one Middlebrook, who, it is claimed, deposited it in his own account. Middlebrook was not produced as a witness, nor was any writing produced in corroboration of this explanation. There are many other facts, that might be detailed, equally indicating that the transactions claimed to have been made were of an unusual character, and not at all in accordance with the general usages and customs of business, and through all the testimony runs the fact that there is nothing in the way of pass books, checks, letters, memoranda, or any other writings to corroborate the statements of these two witnesses.

We are of the opinion that the evidence was such that it would have been entirely competent for a jury to have discredited the testimony of both Dorsett and Shumaker, and to have found that the alleged transactions between them were fictitious, and invented or devised for the purpose of enabling Shumaker to realize upon the notes and to put some one else in a position to enforce payment of the same against the makers. Under the circumstances, it was error to withdraw from the consideration of the jury the credibility of these two witnesses; one of them, Dr. Dorsett, being a son of the plaintiff, and the other, Shumaker, being the payee of the note. Although not directly contradicted, their testimony comes directly within the rule, laid down in Hull v. Littauer, 162 N. Y. 569, 572, 57 N. E. 102, 103, that:

"If the evidence is possible of contradiction in the circumstances, if its truthfulness or accuracy is open to a reasonable doubt upon the facts of the case, and the interest of the witness furnishes a proper ground for hesitating to accept his statements, it is a necessary and just rule that the jury should pass upon it."

The evidence that Dorsett acted as agent for his mother, the plaintiff, in the various transactions, is not so strong; but in view of her own testimony, above set forth, and the testimony of her son that he managed her affairs, we are of the opinion that there was enough evidence to require that the question of his agency and the consequent chargeability of his knowledge and conduct to her, should also have

been permitted to go to the jury. The judgment should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.